[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 28, 2010
JOHN LEY
CLERK

No. 09-15748
Non-Argument Calendar

_____

D. C. Docket No. 08-02297-CV-ECS-1

MICHAEL WATSON,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 28, 2010)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Michael Watson appeals the magistrate judge's order affirming the Social

Security Commissioner's denial of his application for disability insurance and supplemental security income benefits.[1]  After review, we affirm.

## I.  BACKGROUND

Watson worked as a stage hand in the entertainment industry.  In April 2003, Watson applied for disability benefits, alleging inability to work after August 10, 2002, due to several health conditions, including heart trouble, glaucoma, gout, asthma and sinus problems.  Watson was 49 years old, had an eleventh grade education and had no further schooling or vocational training.

Following a hearing in 2007, an Administrative Law Judge ("ALJ") found that Watson had these severe impairments: a self-reported history of myocardial infarction and a history of gout, asthma, glaucoma and substance abuse (non material).  The ALJ found that Watson's subjective complaints of pain and other symptoms were not supported by medical evidence and that Watson's testimony as to his subjective symptoms and their effect on his ability to perform work-related activities was not fully credible.  Based on the medical evidence, the ALJ found that Watson had the residual functional capacity ("RFC") to perform full-time light work that included frequently lifting and/or carrying 10 to 15 pounds; standing and/or walking for 2 to 3 hours; and sitting for 6 to 8 hours during an eight-hour

---

[1]The parties consented to proceeding before a magistrate judge.

work day.  The ALJ also found that Watson had adequate vision, hearing and speech and could use his extremities for pushing, pulling, reaching, handling, grasping, fingering and feeling.  Although Watson had some pain, weakness and fatigue, he could perform activities within a schedule, on a full-time basis and with regular attendance and punctuality.  However, the ALJ determined that Watson was subject to certain limitations, including: (1) no climbing; (2) occasional bending, balancing, stooping, kneeling, crouching, and crawling; (3) no work with, or in proximity to, dangerous machinery and equipment; (4) no commercial driving; and (5) "the performance of simple, repetitive tasking with no frequent change in a routine work setting."

Given these limitations, the ALJ found that Watson could not perform his past relevant work as a stage hand.  However, based on the testimony of a Vocational Expert ("VE"), the ALJ found that there were other full-time light and unskilled jobs subject to these limitations in the national economy that Watson could perform.[2]

The Appeals Council denied Watson's request for review, making the ALJ's

---

[2]The VE testified that a person of Watson's age (between 48 and 54), education and work history and with Watson's RFC had the capability to perform a "reduced range of light work," and identified as representative jobs: (1) information clerk, with 150,000 jobs nationally and 400 jobs in Georgia; (2) order caller, with 17,000 jobs nationally and 550 jobs in Georgia; or (3) cashier II, with 440,000 jobs nationally and 18,000 jobs in Georgia.

decision the final decision of the Commissioner.  See Lewis v. Barnhart, 285 F.3d

1329, 1330 (11th Cir. 2002).  Watson sought review of that final decision in the

district court.

Watson argued, inter alia, that the ALJ erred in relying solely on the VE's

testimony and not applying the Medical-Vocational Guidelines ("the grids") "as a

framework for decisionmaking" to determine whether there were other jobs in the

economy Watson could perform.[3]  After briefing, the magistrate judge entered an

order affirming the Commissioner's decision.  The magistrate judge concluded that

the ALJ was not required to use the grids "as a framework" because Watson had a

combination of exertional and nonexertional limitations and the VE testified as to

whether, in light of those limitations, there were a significant number of jobs in the

economy Watson could perform.  Watson appealed.[4]

## II.  DISCUSSION

### A.  Five-Step Evaluation

An ALJ uses a five-step sequential evaluation to determine whether the

claimant is disabled, which considers: (1) whether the claimant is engaged in

---

[3]Watson argued that the ALJ erred in discrediting him and in failing to consider the side effects of his medication.  However, because Watson does not raise these issues on appeal, we do not address them.

[4]We review de novo the legal principles underlying the ALJ's decision, but review "the resulting decision only to determine whether it is supported by substantial evidence."  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

4

substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform his past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, the claimant can "make an adjustment to other work" that exists in significant numbers in the national economy.  See 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); 416.960(c) & 404.1560(c); see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).[5]  If the claimant proves that he cannot do his past relevant work at the fourth step, the burden shifts to the Commissioner to show, at the fifth step, that the claimant can make an adjustment to other work available in the economy. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Here, there is no dispute as to the first four steps in the ALJ's evaluation of Watson's disability claims.  Indeed, Watson does not challenge the ALJ's

---

[5]Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. §§ 1545(a), 416.945(a).  As to physical abilities, the RFC assesses the claimant's ability to do things like sit, stand, walk, lift, carry, push or pull.  20 C.F.R. § § 404.1545(b), 416.945(b).  As to mental abilities, the RFC assesses the claimant's ability to do things like understand, remember or carry out instructions or respond appropriately to supervision, co-workers or work pressures.  20 C.F.R. §§ 404.1545(c), 416.945(c).  The ALJ's finding as to a claimant's RFC is based on all the relevant evidence in the record, including any medical evidence, and is used in steps four and five of the sequential evaluation to determine whether the claimant can do his past relevant work or any other work. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(5), 416.920(a)(4), 416.945(a)(5).

credibility finding or factual findings as to Watson's severe impairments or his RFC. Watson's appeal focuses solely upon the fifth step, that is, whether there were other jobs to which Watson could "make an adjustment" given his RFC and his age, education and work experience.

**B.     Grids and Vocational Expert**

"There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy." Phillips, 357 F.3d at 1239. First, the ALJ may apply the Medical Vocational Guidelines, commonly known as "the grids," found in 20 C.F.R. § 404, subpart P, appendix 2. Second, the ALJ may consult a vocational expert, or VE, by posing hypothetical questions to the VE to establish whether someone with the claimant's impairments would be able to find employment. Id. at 1239-40.

The grids provide tables based on work classifications of sedentary, light, medium, heavy or very heavy. These classifications are based on the exertional level, or "primary strength activities," the work requires, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. S.S.R. 83-10. Each table considers vocational factors, such as age, education and work experience, to "direct a conclusion" of either disabled or not disabled. See generally, 20 C.F.R. pt. 404,

subpt. P, app. 2 § 200.00(a).[6] These tables constitute "administrative notice" as to the number of unskilled jobs that exist in the national economy at the various exertional levels. Thus, when all the claimant's vocational factors coincide with the criteria in the table, "the existence of jobs is established." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b).

This Court repeatedly has recognized that "exclusive reliance on the grids is not appropriate either": (1) "when the claimant is unable to perform a full range of work at a given residual functional level"; or (2) "when a claimant has non-exertional impairments [i.e., impairments not related to strength] that significantly limit basic work skills."[7] See Phillips, 357 F.3d at 1242 (internal brackets omitted); Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989); see also 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). In either of these cases, the claimant's occupational base (the number of jobs he is able to perform based on his RFC, age,

---

[6]For example, the table for sedentary work "directs a conclusion" of disabled (i.e., automatically deems the person disabled) when the person is approaching advanced age (defined as between 50 and 54 years old), has not graduated from high school and his previous work was unskilled. However, the table directs a conclusion of not disabled if the same person's past work was skilled or semi-skilled and those skills are transferable. 20 C.F.R. pt. 404, subpt. P, app. 2 tbl. 1.

[7]Nonexertional activities include maintaining body equilibrium, crouching, bending, stooping, using fingers, seeing, hearing or speaking, mental functions and tolerating environmental working conditions. S.S.R. 83-14. Reliance solely on the grids is inappropriate when nonexertional limitations are present because the grids take into account only exertional limitations in classifying levels of work as sedentary, light, medium or heavy and do not address nonexertional limitations. See Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).

education and work experience) may be affected. See S.S.R. 83-12 (explaining that when a claimant's exertional limitations do not coincide with a particular exertional level in the grids, the adjudicator may need to consult a vocational expert to determine the extent of any erosion in the occupational base); S.S.R. 83-14 (explaining that when nonexertional impairments are present, the occupational base may be significantly narrowed and the ALJ may need to consult a vocational expert). Thus, in these kinds of cases, the ALJ must make an individualized assessment and consult a VE to determine whether there are jobs in the economy the claimant can perform. See Phillips, 357 F.3d at 1242-43.

When the ALJ cannot rely solely on the grids, the ALJ nonetheless "may use [the grids] as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002); see also Smith v. Bowen, 792 F.2d 1547, 1554-55 (11th Cir. 1986) (stating that the grids "may serve as a framework for consideration of the combination of the exertional and nonexertional limitations"). The regulations likewise recognize that the grids can "still provide guidance for decisionmaking." 20 C.F.R. pt. 404, subpt. P, app. 2

§ 200.00(d); accord id. § 200.00(e)(2).[8]

## C.    Watson's Claims

Because Watson's exertional limitations fell between two exertional levels

(sedentary and light work)[9] and because Watson also had nonexertional limitations,

the ALJ did not rely upon the grids and consulted a VE.[10]  Watson does not

challenge the ALJ's decision to consult a VE.  Nor does he challenge the ALJ's

---

[8]For example, the regulations state that when there is a combination of exertional and nonexertional limitations, the grids "are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(e)(2).  If not, then the grids "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." Id.  "Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under" the grids, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor." Id.  If the issue of occupational base erosion is complex, the ALJ "may use the services of a vocational expert or other specialist." 20 C.F.R. § 404.1566(e); see also S.S.R. 83-14 (stating that in complex situations, "the assistance of a vocational resource may be necessary").

[9]Sedentary work involves lifting no more than 10 pounds at a time, with occasional lifting or carrying of articles such as docket files, ledgers or small tools, and occasional walking or standing.  20 C.F.R. §§ 404.1567(a), 416.967(a).  Light work involves lifting no more than 20 pounds at a time, with frequent lifting and carrying of objects weighing up to 10 pounds, and a good deal of walking, standing or sitting and manipulating arm and leg controls.  20 C.F.R. §§ 404.1567(b), 416.967(b).  The ALJ found that Watson could frequently lift or carry between 10 and 15 pounds, could stand and walk for 2 to 3 hours and could sit for 6 to 8 hours per workday.  Thus, Watson could lift and carry more than is required for light work and could walk and stand less than is required for a full range of light work, but more than is required for sedentary work.

[10]We note that the ALJ may have considered the grids in its decisionmaking.  However, because the ALJ did not refer to the grids explicitly in its written decision, we assume for purposes of this appeal that the ALJ did not use the grids "as a framework" at the fifth step of the evaluative process.

hypothetical questions posed to the VE or the VE's answers in response. Instead, Watson argues only that the ALJ was required to also consult the grids "as a framework" in deciding his case.

We disagree. Nothing in the relevant statutes or regulations requires the ALJ to use the grids as a framework in all instances. Further, Watson provides no precedent from this Circuit or any other circuit to support his claim that the grids must always serve as a framework for the ALJ's step five determination. As we concluded in Phillips, the ALJ has two options under step five: the grids or the testimony of a VE. Under certain circumstances, the ALJ cannot rely solely on the grids and must consult a VE. Under other circumstances, it may be appropriate to consider both. However, this Court has never held that when the ALJ uses VE testimony, the ALJ must also consider the grids. Once it is clear that the grids do not direct a finding of disability one way or the other, the ALJ must make an individualized assessment of whether the claimant can "make an adjustment" to other work based on that particular claimant's RFC, including any exertional and nonexertional limitations, and the claimant's other vocational factors such as age, education and past experience.[11] While reference to the grids may be helpful in

_____

[11]The phrase "make an adjustment to other work" in the regulations reflects the fact that, although there may be jobs the claimant is able to perform given his RFC (called the occupational base), the claimant may have trouble getting one of those jobs because of other vocational factors, such as age, education and work experience. S.S.R. 83-10. The grids build in

10

some cases, the grids are in fact a proxy for individualized evidence, and may not always be helpful. The VE, on the other hand, seems especially suited to the sort of individualized assessment needed in complex cases. See Boone v. Barnhart, 353 F.3d 203, 210 (3d Cir. 2003) (explaining that when the case involves difficult judgments as to whether the occupational base has been eroded, "a VE can provide a more individualized analysis as to what jobs the claimant can and cannot perform").

Watson's case is a good example. Watson does not fall neatly into any categories used in the grids. Some of his exertional limitations correspond more closely to one exertional level or another (sedentary work for standing and walking, but light work for sitting, lifting, carrying, pushing and pulling). One of Watson's vocational factors – age – changed during the alleged period of disability. He started out at 49, which falls in the "younger individual" criterion on the grids, but aged into the "closely approaching advanced age" criterion, which begins at 50. See 20 C.F.R. pt. 404, subpt. P, app. 2 §§ 201.00(h)(1), 202.00(d). Furthermore, Watson's combination of severe impairments produced a mixed bag

_____

an "administrative evaluation" of whether a work adjustment is possible "based on the interaction between the person's occupational base as determined by RFC with his or her age, education and work experience." Id. Generally, the grids assume that the older the claimant is, the more difficult it will be to make an adjustment to other work. Thus, for example, when a claimant is 50 or older, has no transferable skills and is restricted to sedentary work, "a finding of disabled ordinarily obtains." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(g).

of exertional and nonexertional limitations.  Thus, if Watson could have performed only a full range of sedentary work, the grids would have directed a finding of not disabled at 49 and disabled at 50.  See 20 C.F.R. pt. 404, subpt. P, app. 2 §§ 201.09, 201.18.  However, if Watson could have performed a full range of light work, the grids would have directed a finding of not disabled throughout the alleged period of disability.  See 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.10.[12]

But, because of Watson's particular mix of limitations, Watson could perform both some sedentary work and some light work.  The VE opined that there were a significant number of jobs in the economy that fell in Watson's reduced range of light work.  Under the circumstances, the ALJ did not commit reversible error by choosing to rely only on the VE's testimony to determine, under step five, whether given Watson's age, education and work experience, Watson could "make an adjustment" to a range of light work reduced by his specific exertional and nonexertional limitations.

We reject Watson's contention that the ALJ was required to make explicit numerical findings as to any erosion of his occupational base.  The VE's testimony established that there were a significant number of jobs in the economy to which

_____

[12]Notably, the ALJ's hypothetical question included age ranges of 48 to 50 and then 50 to 54, with all other factors remaining the same, and the VE testified that the number of unskilled, light work jobs could would not change due to age.

12

Watson could adjust, which is what the statute and regulations require at step five of the sequential evaluation. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c).

**AFFIRMED.**